IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JUDY D. SANDERS, | § | |
| | § | |
| Plaintiff | § | |
| | § | |
| v. | § | Civil Action No. 3:07-CV-1827-G (BH) |
| | § | |
| COMMISSIONER OF SOCIAL | § | |
| SECURITY ADMINISTRATION, | § | |
| | § | |
| Defendant. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

Pursuant to *Special Order No. 3-251*, this case was automatically referred to the undersigned United States Magistrate Judge for proposed findings of fact and recommendation for disposition. Before the Court are *Plaintiff's Motion for Summary Judgment*, filed March 31, 2008; and *Commissioner's Motion for Summary Judgment*, filed May 29, 2008. Plaintiff did not file a reply. Having reviewed the evidence of the parties in connection with the pleadings, the Court recommends that *Plaintiff's Motion for Summary Judgment* be **GRANTED**, *Commissioner's Motion for Summary Judgment* be **DENIED**, and the case be remanded to the Commissioner for further proceedings.

### I. BACKGROUND[1]

**A.** **Procedural History**

Judy Diane Sanders ("Plaintiff") seeks judicial review of a final decision by the

---

[1] The following background comes from the transcript of the administrative proceedings, which is designated as "Tr."

Commissioner of Social Security ("Commissioner") denying her claim for disability benefits under Title II and Title XVI of the Social Security Act. On June 23, 2004, Plaintiff filed applications for disability insurance benefits ("DIB") and supplemental security income ("SSI"). (Tr. at 93-95). Plaintiff claimed she has been disabled since April 30, 2003, due to back, elbow, heart, and breathing problems; high blood pressure; migraines; restless leg syndrome; insomnia; arthritis; and lichen planus.[2] (Tr. at 93, 152). Plaintiff's application was denied initially and upon reconsideration. (Tr. at 62-65, 68-74). Plaintiff timely requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. at 56). A hearing, at which Plaintiff personally appeared and testified, was held on October 10, 2006. (Tr. at 293-303). On December 28, 2006, the ALJ issued his decision finding Plaintiff not disabled. (Tr. at 42-48). The Appeals Council denied Plaintiff's request for review, concluding that the contentions raised in Plaintiff's request for review did not provide a basis for changing the ALJ's decision. (Tr. at 6-8, 37). Thus, the ALJ's decision became the final decision of the Commissioner. (Tr. at 6). Plaintiff timely appealed the Commissioner's decision to the United States District Court pursuant to 42 U.S.C. § 405(g) on November 1, 2007.

**B.     Factual History**

    **1.     Age, Education, and Work Experience**

Plaintiff was born on March 23, 1948, and was 58 years old At the time of the hearing. (Tr. at 93, 244). She earned a Certificate of General Educational Development and graduated from a technical school. (Tr. at 295). Her past relevant work experience includes work as a bookkeeper and a fast food manager. (Tr. at 301). Plaintiff last worked on April 30, 2003. (Tr. at 295).

---

[2] Lichen planus is a disorder of the skin and mucous membranes resulting in inflammation, itching, and distinctive skin lesions. The exact cause is unknown, but the disorder is likely to be related to an allergic or immune reaction. Medical Encyclopedia, U.S. National Library of Medicine, *available at* http://www.nlm.nih.gov (last visited Aug. 20, 2008).

## 2. Medical Evidence

Plaintiff's relevant medical history began on July 22, 2002, when she visited Family Medical Associates in Cleburne, Texas. (Tr. at 189). The medical notes from this visit are difficult to read but appear to give a diagnosis of "restless leg syndrome." *Id*.

On February 12, 2003, Plaintiff was admitted to Walls Regional Hospital, in Cleburne, Texas, where Dr. Robert Miller, M.D., diagnosed her with "[a]sthma with repeat exacerbation of bronchitis." (Tr. at 159). From March 7 to 11, 2003, Plaintiff was admitted to Walls Regional Hospital with recurrent coughing, wheezing, and difficulty breathing. (Tr. at 165-66). Dr. Miller gave an initial diagnosis of chronic obstructive pulmonary disease with acute bronchitis, hypertension, depression, bipolar disorder, anxiety, and a history of coronary artery disease and stent placement. (Tr. at 165).

On April 13, 2005, Donald Baer, M.A., a licensed psychological associate working for Dr. James Cannici, a psychologist, conducted a consultative psychological examination of Plaintiff. (Tr. at 191-93). Mr. Baer found that Plaintiff's memory was intact, that she performed a number of personal tasks and household chores independently, and that she met the criteria for a depressive disorder. (Tr. at 192). Dr. Cannici signed the clinical interview evaluation. (Tr. at 193).

On May 10, 2005, Dr. Kim Rowlands, M.D., a non-examining state agency medical consultant ("SAMC") reviewed Plaintiff's medical records. (Tr. at 201-08). Dr. Rowlands found that Plaintiff did not have symptoms of coronary artery disease, that her gait was undisturbed by her condition, and that her allegations of disability were not fully supported by the medical evidence. (Tr. at 206).

On May 12, 2005, Dr. Richard Alexander, M.D., a non-examining SAMC reviewed

Plaintiff's medical records as they pertained to her alleged mental impairments. (Tr. at 210-22). Dr. Alexander found that Plaintiff's psychiatric impairment was not severe, but posed mild limitations in difficulty in maintaining social functioning. (Tr. at 210, 220). Dr. Alexander also noted that Plaintiff's allegations were not fully supported by medical evidence. (Tr. at 222).

On January 6, 2006, Dr. Miller diagnosed Plaintiff as having depressive disorder, insomnia, backache, and pure hypercholesterolemia. (Tr. at 283). On September 29, 2006, Dr. Miller completed Social Security Form HA-1151, the "Medical Source Statement of Ability to Do Work-Related Activities (Physical)." (Tr. at 288-90). Dr. Miller determined that Plaintiff could lift less than five pounds; could stand or walk for less than two hours in an eight-hour workday; could sit for less than two hours; was limited in her ability to push and pull; could never climb, balance, kneel, crouch, or crawl; had limited reaching, handling, fingering, and feeling; and that her environmental limitations included temperature extremes, noise, dust, vibration, humidity/wetness, hazards, fumes, odors, and gases. (Tr. at 288-90). There is no corresponding Social Security form from Dr. Miller regarding Plaintiff's mental ability to do work-related activities.

### 3. Hearing Testimony

A hearing was held before the ALJ on October 10, 2006. (Tr. at 291). The hearing was attended by Plaintiff, her attorney, and a vocational expert ("VE"). *Id*.

#### a. *Plaintiff's Testimony*

Plaintiff testified that she was fifty eight years old and that she had no children under the age of eighteen living with her. (Tr. at 294-95). She testified that she has a GED and that she graduated from a technical school. *Id*. Plaintiff also testified that she worked as a bookkeeper until April 30, 2003, when she was terminated due to excessive absences caused by her back pain. (Tr. at 295).

Plaintiff stated that she was limited in her work as a bookkeeper because she could not sit or stand for long periods of time and that she frequently needed to change position. (Tr. at 296). Plaintiff testified that she could not return to a job as a bookkeeper due to her back pain. (Tr. at 297).

Plaintiff testified that she was under the care of Dr. Miller and that he prescribed medication for her pain and depression. (Tr. at 296). On a typical day, she laid down, took naps, watched television, read, and checked her email. (Tr. at 297). Her appetite was not good, and she had lost roughly thirty pounds in the last year. (Tr. at 297-98). She could operate a motor vehicle and had driven herself to the hearing. (Tr. at 298). She also testified that she was not due to undergo any sort of aggressive treatment or therapy for depression, back pain, or heart problems. *Id.*

Under examination by her attorney, Plaintiff testified that she had difficulty sleeping. She typically slept five hours per night, but only two of those hours were uninterrupted sleep. (Tr. at 298-99). On a typical day, she would get up around eight or eight thirty and eat breakfast. (Tr. at 299). She spent much of the morning visiting with her mother (who passed away a week before the hearing). *Id.* She did not cook and usually went out to get something to eat for her and her mother. *Id.* After getting lunch, she would take pain medication and then lie down until around four, when she would watch television with her mother. *Id.*

Plaintiff estimated that she could walk for roughly ten minutes, stand up for roughly ten minutes, or sit for twenty minutes. (Tr. at 299-300). After sitting for twenty minutes, Plaintiff testified that she had to walk around to relieve pains and burning sensations in her back. *Id.* In total, Plaintiff stated that she could sit or stand for one and a half to two hours before needing to lay down. (Tr. at 300). Plaintiff also testified that the medication she took caused drowsiness. (Tr. at 300). She further testified that Dr. Miller recommended that she receive an MRI and x-rays, but that she

had not had these tests done due to lack of funds and no insurance. (Tr. at 300).

### b. *Vocational Expert Testimony*

Carol Bennet, a VE, also testified at the hearing. In response to a question from the ALJ, the VE classified the exertional demands and skill requirements of a bookkeeper as sedentary, skilled, with a SVP of six. The VE classified a fast food manager as light, skilled, with a SVP of five. (Tr. at 301). The VE testified that an individual working as either a bookkeeper or accountant would have the freedom to occasionally change positions at the work site from sitting to standing. *Id*.

Under examination by Plaintiff's attorney, the VE testified that a bookkeeper would not be able to sustain employment if her concentration was impaired. (Tr. at 302). A bookkeeper would typically have breaks of fifteen to twenty minutes in the morning and afternoons. *Id*. The VE testified that the standard of production for a bookkeeper varied depending on the day and week, but that she would need to be able to meet monthly deadlines. (Tr. at 303). Finally, the VE testified that although the requirements of a sedentary job stipulate sitting for six hours in an eight hour workday, a bookkeeper had frequent opportunities to stand and change positions. *Id*.

**C.     ALJ's Findings**

The ALJ denied Plaintiff's application for benefits by written opinion issued on December 28, 2006. (Tr. at 42-48). The ALJ determined that Plaintiff met the insured status requirements of the Social Security Act through September 30, 2008, and that she had not engaged in substantial gainful activity since April 30, 2003, the alleged onset date. (Tr. at 44, ¶¶1, 2). The ALJ determined that Plaintiff had the severe impairments of chronic obstructive pulmonary disease, hypertension, and osteoarthritis. (Tr. at 44, ¶3). With regards to her alleged mental disorder, the ALJ referenced the evaluation by Dr. Cannici and the Dr. Miller's treatment for depression. (Tr. at 45). The ALJ

then stated that Plaintiff "does not have a severe mental impairment. She has not been diagnosed or treated by a mental health professional for bipolar disorder or for her depression, only by her family physician. She has not sought treatment in the form of mental health counseling or therapy." *Id*. The ALJ also remarked that Plaintiff's ability to perform household chores and other activities of daily living indicated that she did not have "a serious mental impairment." *Id*.

The ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. at 45, ¶4). Specifically, he determined that Plaintiff did not meet the requirements for Listing 3.02 (chronic pulmonary insufficiency), Listing 4.03 (hypertensive cardiovascular disease), or Listing 1.04 (disorders of the spine). *Id*. The ALJ also concluded that Plaintiff had mild restrictions of her activities of daily living; mild difficulties in maintaining social functioning; mild difficulties in maintaining concentration, persistence, or pace; no episodes of decompensation of extended duration; and no evidence of C criteria. (Tr. at 45-46).

The ALJ determined that Plaintiff had the residual functional capacity ("RFC") to lift and carry 10 pounds; stand or walk for two of eight hours in a work day; sit for six of eight hours in a workday; and that she occasionally needed to change position from sitting to standing. (Tr. at 46, ¶5). The ALJ considered the effects of the claimant's obesity and the lack of documentation showing that Plaintiff followed her doctor's treatment of quitting smoking when arriving at the RFC. *Id*. The ALJ determined that Plaintiff's "medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." (Tr. at 47). Based on her RFC, the ALJ found that Plaintiff was capable of performing her past relevant work as a

bookkeeper. (Tr. at 47, ¶6). The ALJ therefore concluded that Plaintiff was not under a disability as defined in the Social Security Act, from her alleged onset date through the date of his decision. (Tr. at 48, ¶7).

## II. ANALYSIS

### A. Legal Standards

#### 1. Standard of Review

Judicial review of the Commissioner's denial of benefits is limited to whether the Commissioner's position is supported by substantial evidence and whether the Commissioner applied proper legal standards in evaluating the evidence. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994); 42 U.S.C. § 405(g), 1383(C)(3). Substantial evidence is defined as more than a scintilla, less than a preponderance, and as being such relevant and sufficient evidence as a reasonable mind might accept as adequate to support a conclusion. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). In applying the substantial evidence standard, the reviewing court does not reweigh the evidence, retry the issues, or substitute its own judgment, but rather, scrutinizes the record to determine whether substantial evidence is present. *Greenspan*, 38 F.3d at 236. A finding of no substantial evidence is appropriate only if there is a conspicuous absence of credible evidentiary choices or contrary medical findings to support the Commissioner's decision. *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988).

The scope of judicial review of a decision under the supplemental security income program is identical to that of a decision under the social security disability program. *Davis v. Heckler*, 759 F.2d 432, 435 (5th Cir. 1985). Moreover, the relevant law and regulations governing the determination of disability under a claim for disability insurance benefits are identical to those

governing the determination under a claim for supplemental security income. *See id*. Thus, the Court may rely on decisions in both areas without distinction in reviewing an ALJ's decision. *See id*.

### 2. Disability Determination

To be entitled to social security benefits, a claimant must prove that he or she is disabled as defined by the Social Security Act. *Leggett*, 67 F.3d at 563–64; *Abshire v. Bowen*, 848 F.2d 638, 640 (5th Cir. 1988). The definition of disability under the Social Security Act is "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *Anthony v. Sullivan*, 954 F.2d 289, 292 (5th Cir. 1992).

The Commissioner utilizes a sequential five-step analysis to determine whether a claimant is disabled:

1. An individual who is working and engaging in substantial gainful activity will not be found disabled regardless of medical findings.

2. An individual who does not have a "severe impairment" will not be found to be disabled.

3. An individual who "meets or equals a listed impairment in Appendix 1" of the regulations will be considered disabled without consideration of vocational factors.

4. If an individual is capable of performing the work he has done in the past, a finding of "not disabled" must be made.

5. If an individual's impairment precludes him from performing his past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if work can be performed.

*Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991) (summarizing 20 C.F.R. § 404.1520(b)-(f)).

Under the first four steps of the analysis, the burden lies with the claimant to prove disability. *Leggett*, 67 F.3d at 564. The analysis terminates if the Commissioner determines at any point during the first four steps that the claimant is disabled or is not disabled. *Id*. Once the claimant satisfies his or her burden under the first four steps, the burden shifts to the Commissioner at step five to show that there is other gainful employment available in the national economy that the claimant is capable of performing. *Greenspan*, 38 F.3d at 236. This burden may be satisfied either by reference to the Medical-Vocational Guidelines of the regulations or by expert vocational testimony or other similar evidence. *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987). A finding that a claimant is not disabled at any point in the five-step review is conclusive and terminates the analysis. *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

**B.**     **Issues for Review**

Plaintiff presents the following issues for review:

(1)     The determination that Plaintiff's mental impairment is not severe is not supported by substantial evidence;

(2)     The ALJ decision violates the treating physician rule;

(3)     The ALJ failed in his duty to recontact;

(4)     The ALJ determination that the claimant can perform her past relevant work as a bookkeeper is not supported by substantial evidence;

(5)     The ALJ's determination of the claimant's credibility is not supported by substantial evidence; and

(6)     The ALJ's determination of the claimant's residual functional capacity is not supported by substantial evidence.

(Pl. Mot. at 2-3).

## C. Issue One: Severe Impairment

The first issue Plaintiff presents for review is whether the ALJ erred by failing to include depression and restless leg syndrome as severe impairments at step two of the sequential five-step analysis. (Pl. Mot. at 3-5).

Pursuant to the Commissioner's regulations, a severe impairment is "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). The Fifth Circuit has held that a literal application of this regulation would be inconsistent with the Social Security Act because the regulation includes fewer conditions than indicated by the statute. *Stone v. Heckler*, 752 F.2d 1099, 1104-05 (5th Cir. 1985). Accordingly, in the Fifth Circuit, an impairment is not severe "only if it is a slight abnormality having such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work." *Id*. at 1101. Additionally, the determination of severity may not be "made without regard to the individual's ability to perform substantial gainful activity." *Id*. at 1104. To ensure that the regulatory standard for severity does not limit a claimant's rights, the Fifth Circuit held in *Stone* that it would assume that the "ALJ and Appeals Council have applied an incorrect standard to the severity requirement unless the correct standard is set forth by reference to this opinion or another of the same effect, or by an express statement that the construction we give to 20 C.F.R. § 404.1520(c) (1984) is used." *Id*. at 1106; *accord Loza v. Apfel*, 219 F.3d 378, 393 (5th Cir. 2000); *Eisenbach v. Apfel*, 2001 WL 1041806, at *6 (N.D. Tex. Aug. 29, 2001) (Boyle, J.). Notwithstanding this presumption, the Court must look beyond the use of "magic words" and determine whether the ALJ applied the correct severity standard. *Hampton v. Bowen*, 785 F.2d 1308, 1311 (5th Cir. 1986). Unless the correct standard of severity is used, the

claim must be remanded to the Secretary for reconsideration. *Stone*, 752 F.2d at 1106.

In this case, the ALJ cited the Social Security regulation's definition for a severe impairment. (Tr. at 43) (citing 20 C.F.R. § 404.1520(c)). He did not explicitly reference *Stone* or a similar opinion applying the Fifth Circuit's standard. *See id*. He did, however, state that "[a]n impairment or combination of impairments is 'not severe' when medical or other evidence establish only a slight abnormality or combination of slight abnormalities *that would have no more than a minimal effect on an individual's ability to work*." (Tr. at 43) (emphasis added). Thus, according to the standard applied by the ALJ, a severe impairment could have, at most, a minimal effect on a claimant's ability to work. This is not the standard set forth in *Stone*, which holds that a severe impairment "would *not* be expected to interfere with the individual's ability to work." 752 F.2d at 1101 (emphasis added). Unlike the standard applied by the ALJ, *Stone* provides no allowance for a minimal interference on a claimant's ability to work. While the difference between the two statements appears slight, it is clear that the ALJ's construction is not an express statement of the *Stone* standard. This difference, coupled with the ALJ's failure to cite *Stone* or a similar opinion, leads the Court to conclude that the ALJ applied an incorrect standard of severity at step 2.

Additional evidence in the ALJ's narrative discussion supports this conclusion, particularly with regards to Plaintiff's depression. For example, the ALJ referenced the mental evaluation by Dr. Cannici that diagnosed Plaintiff with depression. (Tr. at 45) (*see* Tr. at 191-93). He later stated that Plaintiff "has not been diagnosed or treated by a mental health professional for bipolar disorder or for depression, only by her family physician." (Tr. at 45). There are two problems with this statement. First, it is inaccurate because Dr. Cannici is a licensed psychologist. Although Dr. Cannici did not conduct the clinical interview of Plaintiff himself, he signed the evaluation of his

colleague (a licensed psychological associate) and thus concurred with the diagnosis of depression. (Tr. at 193). Second, the fact that Dr. Miller is Plaintiff's family physician, and not a mental health professional, does not mean that his diagnosis of depression can be dismissed entirely. As a licensed physician, Dr. Miller is an acceptable medical source who can provide evidence to establish the existence of a medically determinable impairment. 20 C.F.R. § 404.1513(a)(1). The relative weight accorded to the impairing effects of Plaintiff's depression as discussed in the diagnoses of Dr. Cannici and Dr. Miller is something that should be addressed in the RFC assessment, not at the determination of a severe impairment. *See* 20 C.F.R. § 404.1520(a) (procedure for evaluating mental impairments); 20 C.F.R. § 404.1527(d) (weight accorded to medical opinions). Given the ALJ's disregard for evidence of depression from two medical sources, it is apparent that he applied an incorrect standard of severity at step 2.

Defendant contends that the evidence supports the ALJ's finding that Plaintiff's depression and restless leg syndrome were not severe impairments. (Def. Mot. at 4). This assertion is flawed for two reasons. First, judicial review entails an evaluation of whether the Commissioner applied the proper legal standards in addition to whether substantial evidence supports the decision. *Greenspan*, 38 F.3d at 236. As determined previously, the ALJ applied the incorrect legal standard when he evaluated Plaintiff's severe impairments. Second, given the low bar for the establishment of a severe impairment, Plaintiff presented some evidence that could support a finding of depression as a severe impairment. As stated in the preceding paragraph, at least two licensed medical sources diagnosed Plaintiff with depression. Plaintiff also presented some evidence about how her depression allegedly affected her daily activities. (Pl. Mot. at 4) (citing Tr. at 125-28, 297-300). As for Plaintiff's allegation of restless leg syndrome, evidence in support of this condition is sparse.

(Tr. at 189). Nevertheless, it appears that she may have been diagnosed with this condition. *See id*. Defendant's argument for affirming the ALJ's decision on the evidence in the record is therefore unavailing.

Generally, appeals from administrative agencies of a procedural error will not lead to a vacated judgment "unless the substantial rights of a party have been affected." *Anderson v. Sullivan*, 887 F.2d 630, 634 (5th Cir. 1989) (citing *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988) (per curiam)). However, the ALJ's failure to apply the *Stone* standard was a legal error, not a procedural error. The Fifth Circuit left the lower courts no discretion to determine whether such an error was harmless. Rather, the court mandated that "[u]nless the correct standard is used, the claim *must* be remanded to the Secretary for reconsideration." *Stone*, 752 F.2d at 1106 (emphasis added). Because remand is required for an error at step 2, the Court does not consider Plaintiff's remaining issues for review.

### III. RECOMMENDATION

For the foregoing reasons, the Court **RECOMMENDS** that *Plaintiff's Motion for Summary Judgment* be **GRANTED**, *Commissioner's Motion for Summary Judgment* be **DENIED**, the decision of the Commissioner be **REVERSED**, and the case be **REMANDED** for reconsideration consistent with these findings.

On remand the ALJ must, as a part of his step two analysis, determine whether Plaintiff's depression and restless leg syndrom constitute severe impairments within the meaning set forth by the Fifth Circuit in *Stone v. Heckler*, 752 F.2d 1099 (1985). If the ALJ determines that these impairments are severe, the ALJ should proceed through the sequential steps of the disability determination process.

**SO RECOMMENDED** on this 21st day of August, 2008.

_____
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND**
**NOTICE OF RIGHT TO APPEAL/OBJECT**

Pursuant to Title 28, United States Code, Section 636(b)(1), any party who desires to object to these findings, conclusions and recommendation must file and serve written objections within ten (10) days after being served with a copy. A party filing objections must specifically identify those findings, conclusions or recommendation to which objections are being made. The District Court need not consider frivolous, conclusory or general objections. A party's failure to file such written objections to these proposed findings, conclusions and recommendation shall bar that party from a *de novo* determination by the District Court. *See Thomas v. Arn*, 474 U.S. 140, 150 (1985)*; Perales v. Casillas*, 950 F.2d 1066, 1070 (5th Cir. 1992). Additionally, any failure to file written objections to the proposed findings, conclusions and recommendation within ten (10) days after being served with a copy shall bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc).

_____
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE